THE STATE OF KANSAS v. HARRY E. MASON.

**No. 11,514.** (58 Pac. 978.)

1. BANKS AND BANKING—*Existence Begins with Filing of Charter.* Where several persons associate themselves together with a view of organizing a bank, and duly file a charter as a state banking corporation, the existence of the corporation dates from the filing of the charter; and if such bank is thereafter conducted under the supervision and control of the bank commissioner and is recognized and treated by him as one having authority, the mere omission or neglect of the commissioner formally to issue a written certificate of authority will not exempt the officers of the bank from an observance of the requirements of the banking law, or excuse them for violations of the same.

2. ——— *Officers Estopped from Denying Regularity of Organization.* Where such a bank is duly chartered and holds itself out to the public as a banking institution, receiving money on deposit and otherwise transacting a banking business, and where the officers, having knowledge of the manner in which the bank is doing business, make reports to the bank commissioner on demand, showing the character of the business done, they cannot be heard to deny that the bank is duly organized and doing business under the laws of the state, and such officers become liable to punishment for a violation of any of the penal provisions of the banking law, the same as though a formal certificate of authority had been issued to it by the bank commissioner.

3. ——— *Jurisdiction of Offense by Officer.* Where a false report or false statement of the condition of a bank is made, subscribed and sworn to by an officer of a bank in one county, and is then transmitted to and received by the bank commissioner in another county, in which his office is held, the jurisdiction of the offense in either county.

The State v. Mason.

4. ———— *Intention of Offender.* If the report or statement be false, and known to be such, and is made with intent to deceive the bank commissioner, or other persons, as to the financial condition of the bank, the person making it is guilty, although he he may not have intended to injure the bank or defraud its depositors.

5. ———— *Evidence Sufficient.* The evidence examined, and held to be sufficient to sustain the verdict and judgment.

Appeal from Marion district court; O. L. MOORE, judge. Opinion filed November 11, 1899. Affirmed.

*A. A. Godard,* attorney-general, *J. T. Dickerson,* county attorney, and *G. F. Grattan,* for The State.

*King & Kelley,* and *Keller & Dean,* for appellant.

The opinion of the court was delivered by

JOHNSTON, J. : In an information containing eleven counts, Harry E. Mason and another were charged with making false entries in the books of the First State Bank of Marion, of which Mason was president, and also of making false statements and reports to the bank commissioner in respect to the financial condition of the bank at stated times. A separate trial was had, at which Mason was convicted of the offenses charged in three of the counts. One was the entry in the books of the bank of a general deposit account under the name of Levi Oglesberger, which was continued for more than a year, and which made it appear that Oglesberger was making deposits and checking out funds from time to time, when in fact he was a myth and the account fictitious. Another was the making of a false statement and report to the bank commissioner of the financial condition of the bank at the close of business on December 27, 1897. The remaining one was falsely entering in the books as a credit of the bank a certain check for $1800

which was forged and fictitious and known to be such, and that it was done with intent to deceive the bank commissioner and other persons.   The punishment imposed was imprisonment for one year on each of the two charges first named, and on the last it was a fine of $100.

The first, and principal, ground urged for reversal is an alleged failure of proof.   In the information it was alleged that the bank was incorpo-rated under and by virtue of the laws of Kansas, and that it was carrying on the banking business under the banking laws of the state. It was averred that Mason was president of the bank, and that as such he committed the offenses charged against him.   The contention is that it was essential for the state to prove that the bank was incorporated in the manner provided by law, and that it was authorized to transact and was carrying on business in the manner authorized by the law relating to bank-ing.   The bank was incorporated in 1894, at which time it made a statement to the bank commissioner in attempted compliance with section 5, chapter 43, Laws of 1891 (Gen. Stat. 1897, ch. 18, § 24; Gen. Stat. 1899, § 411), but the statement for some reason was unsatisfactory to the bank commissioner, and he then refused to issue a certificate of authority.   This state-ment, among others, was made by the bank commis-sioner as a witness, and upon cross-examination he appears to have stated that a certificate was not there-after issued to the bank.   He testified, however, that the bank carried on business under his supervision and control ; that he caused examinations to be made of its business, and called for reports from time to time, which were made.   During the year 1897 and a portion of 1898, when the offenses were alleged to have

1. Certificate of bank commis-sioner unnec-essary.

been committed, the officers of the bank made regular reports to the bank commissioner, when required, making at least four such reports during 1897, and one prior to May, 1898. During that time examinations were made and the business was carried on as though it were an authorized bank, and it was treated as such by the bank commissioner.

The organization of the bank was completed in 1894, that is, the steps necessary to obtain a charter and make it a corporate body were then taken. Seven persons associated themselves together to conduct a banking business, took a corporate name, fixed the capital stock at $10,000, which was duly subscribed by stockholders, whose names and residences were given, six of whom were residents of Kansas. The articles of association were duly acknowledged, and were filed as the charter of the company with the secretary of state. Section 3 of the banking act (Gen. Stat. 1897, ch. 18, § 5; Gen. Stat. 1899, § 409) provides that the existence of the bank as a corporation shall date from the filing of its charter. It contains a proviso that the bank, however, shall transact no business except the election of officers, the taking and approving of official bonds, the receipts of payments on account of subscriptions to capital stock, and such other business as is incidental to its organization, until it has been authorized by the bank commissioner to commence the business of banking. Other provisions of the act are that if the bank commissioner upon examination finds that the bank has been duly organized, and has complied with the provisions of the law, he shall issue to it a certificate of authority. ( Laws 1891, ch. 43, §§ 5, 16 ; Gen. Stat. 1897, ch. 18, §§ 24, 58 ; Gen. Stat. 1899, §§ 411, 421.) It is made unlawful for any individual, firm or corporation to

transact a banking business without first having received a certificate of authority, and any person violating this provision individually, or as interested party in any association or corporation, is subject to prosecution and to a penalty of both fine and imprisonment. From these provisions it is argued that because no certificate was issued no corporation was proved, and that, therefore, the prosecution must fail.

However important the issuance of a formal certificate may be, it would hardly seem that the defendant was in a position to question the regularity of the organization, or to avail himself of defects of incorporation. Ordinarily the regularity of corporate organization is a matter between the corporation and the

2. Estopped from denying regularity in organization.

state, and no one but the state can challenge the regularity of such organization. It is the state which alone can incorporate, and it may waive an irregularity or acquiesce in a usurpation. The remedy for these wrongs rests with the state alone, and the legal existence of the corporation is not open to collateral attack. A statute exists authorizing the organization of such a bank, an attempt was made to organize under the statute, and the bank for a series of years conducted a banking business unchallenged by the state and as if it had been legally organized. Granting that there is a defect in the organization, the bank would at least be a *de facto* corporation. So long as the state acquiesced in its existence and in its exercise of corporate functions it would be governed by the same legal principles as though it were a corporation *de jure*. (*Pape v. Capitol Bank*, 20 Kan. 440.) An officer who helped to organize the corporation and who has been connected with it continuously for a series of years will hardly be allowed to shield himself from the penalty of vio-

lated law because of irregularities and defects in the organization. Then, again, the essential steps in the process of incorporation are those which precede the filing of the charter, as the statute declares that the existence of such bank as a corporation dates from the filing of the charter. The corporation is then *in esse,* authorized to exercise certain corporate functions, but before other corporate powers may be exercised certain other things must be done. The failure to do the latter things subjects the banker to punishment, but does not extinguish the corporate existence of the bank.

Another, and a controlling, consideration is the fact that the bank commissioner, whose duty it was to issue a certificate of authority, recognized and treated the bank as one having authority. The state claims that the testimony does not bear the interpretation that no certificate was ever issued, but rather that there was a refusal at the time of the first application and report. On this point the evidence is meager and unsatisfactory, but assuming that no formal certificate was issued, it is abundantly shown that the bank carried on business for years with the consent and under the authority of the commissioner. There was not only actual authority, but it was accompanied by supervision and control, at least during the period when the offenses charged were committed. There being actual authority, will the inadvertence or neglect of the commissioner to deliver written authority exempt the officers from an observance of the statutory provisions regulating banking? If the commissioner overlooked or failed to issue a formal certificate, and should, after supervising the business of the bank for years and treating it as though it had authority, undertake to prosecute the defendant for doing busi-

ness without a certificate, would the latter concede, or any one claim, that authority was lacking, or that the mere omission of the commissioner to write out the certificate would subject the defendant to prosecution and punishment? We think not.

The fact that the real authority granted was not formally expressed in writing did not make it an unauthorized bank nor absolve the banker from the requirements and penalties of the banking law. This is apparent, too, from the provisions of section 36 of the act, which provides that "any individual, firm or corporation who shall receive money on deposit, whether on certificate or subject to check, shall be considered as doing a banking business, and shall be amenable to all the provisions of this act." We think the court ruled correctly when it instructed the jury that, if the evidence proved beyond a reasonable doubt that the bank was duly incorporated under the laws of the state; "that it held itself out to the public as a banking institution; that it received money on deposit, either on certificate or subject to check; that the officers made reports to the bank commissioner when demanded, which reports purported to show that said First State Bank of Marion was a bank and doing a banking business; . . . the officers of such bank who had knowledge of the manner in which such bank was doing business cannot be heard to deny that said bank was duly organized and doing business under the laws of the state of Kansas, and such officers would be liable to punishment for a violation of any of the penal sections and provisions of said banking laws of the state, the same as though said bank had had a certificate from the bank commissioner directly authorizing it to do a banking business."

The next contention is that the offense attempted to be charged in the third count of the information was shown to have been committed in Shawnee county, and of which there could be no conviction in Marion county. The charge is that in Marion county he did subscribe to and make a certain written report and written statement of the financial condition of the bank to the bank commissioner, and setting forth wherein it was false. Under section 14 of the act, it is provided that every officer, director, agent or clerk of a bank doing business in Kansas "who wilfully and knowingly subscribes to or makes any false report or false statement or entry in the books of such bank, or knowingly subscribes or exhibits any false writing or paper, with the intent to deceive any person as to the condition of such bank, shall be punished," etc. The defendant subscribed to and made the statement and report in Marion county, and then transmitted it to the bank commissioner, whose office is held in Topeka, Shawnee county. The principal steps in the transaction were taken in Marion county; the statement and report were prepared there; it was subscribed and sworn to in Marion county, and before a notary public of that county; but of course it was forwarded to and received by the bank commissioner in another county. It, therefore, may be said that the offense has been committed partly in each of the counties named, and, under the provisions of section 23 of the criminal code (Gen. Stat 1897, ch. 102, § 23; Gen. Stat. 1899, § 5271), the jurisdiction is in either county.

None of the objections to evidence can be sustained. We think the books of the bank offered in evidence were sufficiently identified, and that the testimony complained of was properly admitted.

*3. Jurisdiction in either county.*

Complaint is made of the rulings of the court in charging the jury, and especially of some general comments in the opening part of the charge. The court remarked on the interest of the public in safe depositories, the passage of the banking law and the reasons for its enactment, the purposes designed to be subserved by different sections thereof, the duties of the bank commissioner and of the officers of the bank. The remarks along this line we think were unnecessarily extended, but we fail to see anything in them that is prejudicial to the defendant or furnishes any ground for reversal.

Nor do we see any good ground to complain of the instructions of the court with reference to the intent with which the offense was committed. The jury were told that the officer who verifies the report made to the bank commissioner should know whether it is in fact true and correct, and that he cannot afterward be heard to say that he does not know the facts, unless he was himself deceived. The jury were also told that the law presumes a man intends the legitimate consequences of his acts, and if the natural and probable consequence of an entry in the books or the report made is to deceive the officers or bank commissioner or other persons, they might presume that it was made with that intent. In this connection it was said : "It is no defense to a wrongful act knowingly and intentionally committed that it was done with an innocent intent." If the entry, report or statement is false, and is made with the intent to deceive the commissioner or other persons as to the condition of the bank, the offense is committed, although the person making it may not have intended to injure the bank or defraud its depositors ; and that was the sense

4. Intention to injure bank or depositors unnecessary.

The State v. Mason.

in which the quoted instruction was used.  Proof had been offered by the defendant that he did not intend to wrong or injure the bank, and this was the innocent intent to which reference was made.  The court in other parts of the charge stated that " it was not the purpose of the legislature to punish an officer who through an honest mistake makes an entry in one of the books or reports of the bank which he believes to be true when it is in fact false, and it follows, therefore, that in order to convict the defendant you must find that he not only made a false entry in one of the books or reports of the bank, but also that he knew the entry to be false when he made it."  We think the law of the case was fairly presented to the jury, and that no error was committed in the rulings on requests made or in the instructions given.  The evidence sustains the verdict, and, perceiving no error, the judgment will be affirmed.

DOSTER, C. J. (concurring specially): I concur in the decision of this case, but I do not approve to the extent stated by Mr. Justice Johnston the doctrine that the state only can raise the question of the validity of corporate organization.  If the objectionable portion of the opinion can be understood as applying to matters of mere regularity of corporate organization, it is, perhaps, not subject to criticism, but I fear that it may not be so understood.  It seems to me to give countenance to the idea that questions as to the legal validity of corporate organization, and hence of corporate power, can only be raised by the state.  I do not believe in that doctrine.