(117 N. W. 946.)

---

## State of North Dakota v. Elias Johnson.

Opinion filed November 18, 1908.

### Criminal Law — Arrest of Judgment — Information.

1. The sufficiency of the allegations of an information, when raised by a motion in arrest of judgment, will be construed with less strict- ness than when raised by demurrer.

### Sufficiency of Information — Motion in Arrest.

2. Where an information states facts constituting an offense in general words, and in the language of the statute defining the of- fense, the information is sufficient, as against a motion in arrest of judgment, although some of the necessary allegations are stated or appear by inference, and not by positive allegation.

### Criminal Law — Evidence — Intent.

3. A person accused of a crime, in the commission of which a corrupt intent is a necessary ingredient thereof, may testify what his intent was in doing certain acts.

### Objections to Evidence.

4. Objections to certain questions considered, and *held* error to sus- tain them.

### Criminal Law — Evidence of Intent.

5. A person accused of crime should be allowed the fullest lati- tude to explain what his intent was in writing or making statements, apparently incriminating, and in explaining what he meant by certain equivocal statements.

Appeal from District Court, Benson County; *Cowan, J.*

Elias Johnson was convicted of offering a bribe to a road over-seer and appeals.

Reversed and remanded.

*F. Baldwin, C. B. Craven, Craven & Maxfield,* and *R. A. Stewart,* for appellant.

*T. F. McCue,* Atty. Gen., for the state.

MORGAN, C. J. The defendant was convicted of the crime of offering a bribe to a road overseer or supervisor, and sentenced to one year and six months in the penitentiary. The assignments of error on his appeal are: (1) That the information fails to state facts constituting an offense against the laws of the state of North Dakota; (2) that prejudicial errors were committed in sustaining objections to certain questions; (3) that the evidence is insufficient to sustain the verdict. The information is in the following words, omitting formal parts, concerning which no objection is made: "That at the said county of Benson, state of North Dakota, on the 27th day of July, A. D. 1905, the said Elias Johnson did willfully, unlawfully, and feloniously offer and give a bribe to one Edwin Olson, who was then and there duly appointed, qualified, and acting road supervisor and road overseer in and for the west half of township 155, range 68, in said county of Benson, by then and there offering and giving to the said Edwin Olson a bank check for the sum of $75, and of the value of $75, made, executed and delivered then and there by the said Elias Johnson to the said Edwin Olson, which bank check is in words and figures as follows, to wit: 'For taxes v. N. P. R. R. Co., 155-68, Benson county, 1905, No. 145, Carrington, N. Dak., July 28, 1905. Pay to the order of Edwin Olson $75.00 seventy-five and no-100ths dollars. Elias Johnson. To Commercial State Bank, Carrington, N. Dak.' Which said bank check was then and there offered, given, and delivered to the said Edwin Olson by the said Elias Johnson through the United States mail, with the intent then and there, on the part of the said Elias Johnson, to induce and influence the said Edwin Olson, as road supervisor and road overseer, as aforesaid, to sign as such road supervisor and road overseer, as aforesaid, a certain receipt in words and figures following: 'The state of North Dakota, county of Benson, township 155, 68, road district, 21-2,

July 28, 1905.   Received of Elias Johnson the sum of one hundred and thirteen and 75-100 ($113.75) in labor upon the highways in said district, in full for district road tax, for the year 1905 against the Northern Pacific Railway Company on personal property valuation of $———— in said district as follows:   Labor of man 55½ days, labor of team and wagon or plow 35½ days. ———— Road Overseer.'   The said Elias Johnson, then and there well knowing that the said Elias Johnson had not done, or caused to be done, any of the labor or paid said sum of $113.75 mentioned in said receipt, for which he (the said Elias Johnson) offered and gave the said Edwin Olson the bribe as aforesaid, to induce and influence the said Edwin Olson, as road supervisor and road overseer, to sign said receipt as aforesaid.   *   *   *"
The objections urged against the information are:   (1) That it does not state that the defendant knew that Edwin Olson was a road overseer or supervisor;   (2) that it does not state that the bribe was offered with corrupt intent.   The information is drawn under section 8633, Rev. Code 1905, which reads as follows:   "Every person who gives or offers any bribe to an executive officer of this state, with intent to influence him in respect to any act, decision, vote, opinion, or other proceedings of such officer, is punishable," etc.   It will be seen that the information charges that the bribe was offered to the road overseer with intent "to induce and influence the said Olson, as road supervisor and road overseer, as aforesaid, to sign, as such road supervisor and road overseer, as aforesaid, a certain receipt,   *   *   *   knowing that the said Elias Johnson had not done, or caused to be done, any of the labor, or paid said sum of $113.75," etc.   It is claimed that the fact that the defendant knew that Olson was a road overseer must be directly charged, and that it is not sufficient to charge this fact inferentially or indirectly.   It is also claimed that a corrupt intent must be directly charged, and that it is not sufficient that the corrupt intent appears as a necessary conclusion from the facts stated.   In reference to these objections it may be said that neither of them was made or raised by demurrer.   There was a plea of not guilty entered without in any way attacking the sufficiency of the information and no objection was made to the introduction of evidence based on the insufficiency of the information.

The objections are now presented under an exception to the denial of a motion in arrest of judgment, in which these objections were specifically set forth. It may also be stated that the information states all the facts required by said section 8633, Rev. Codes 1905, and states such facts substantially in the general language of that section. It cannot be said that there is a total absence of any allegation of fact that is made a constituent element of the crime of bribery. The most that can be said of the information is that its averments as to the intent, and as to knowledge that Olson was a road supervisor, are not made with the absolute directness and certainty that is required in informations before they will be sustained when attacked by demurrer. It is true that the failure of an information to state facts constituting an offense against the state may be raised for the first time by a motion in arrest of judgment. When so raised for the first time, however, we deem it well settled that the same strict rules will not be enforced in testing the sufficiency of the information as are applied or will be applied, when its sufficiency is challenged by demurrer If the information states an offense, though imperfectly, by reason of general statements, or it is defective as to some matter not of the substance of the offense, then a motion in arrest of judgment will not lie. It is only in case of an omission of allegations as to ingredients of the offense that pertain to the substance thereof that the insufficiency of the information can be attacked after trial by a motion in arrest of judgment. In State v. Knowles, 34 Kan. 393, 8 Pac. 861, the court said: "Where an averment, which is necessary to support a particular part of a complaint or information filed in a criminal case, is imperfectly stated, or stated in very general terms, a verdict or plea of guilty cures the defective averment, although such averment might have been bad on demurrer or motion to quash." The Kansas statute, under which this decision was based is similar to our own as to motions in arrest of judgment. In this case the information charges the defendant with unlawfully and feloniously having offered a bribe, and then states the facts constituting such offer, and in a general way that it was done with intent to influence the action of the road overseer. The word "bribe" is given a specific meaning by section 9526, Rev. Codes 1905, and whenever used in the Code signifies anything of value or advantage, or any promise or undertaking in reference thereto which is asked, given, or accepted with a corrupt intent to

influence unlawfully the person to whom it is given in any public or official capacity. With this fixed meaning to the word "bribe," in connection with the charge that the bribe was offered unlawfully and feloniously, with intent to influence the action of the road overseer, we think it clear that the defendant was apprised fully of the charge against him, and that sufficient facts are stated to make it certain what offense he is charged with in case of an attempt to again file an information against him for the same offense. The information, therefore, states sufficient facts to charge the crime of bribery, as against an attack by motion in arrest of judgment. Some more liberality is permissible in construing allegations of informations when attacked by motion in arrest than when a demurrer is resorted to. Wharton, Crim. Pleading & Pr. (8th Ed.) § 760; 12 Cyc. p. 760, and cases cited; People v. Swenson, 49 Cal. 388; United States v. Dimmick (D. C.) 112 Fed. 352; Bishop on Crim. Proc. § 707.

Section 10157, Rev. Codes 1905, provides as follows:' "After hearing the appeal the court must give judgment without regard to technical errors, or defects or exceptions which do not affect the substantial rights of the parties." The record presents facts warranting the application of this section. The information is not substantially defective as to any allegaton. Every requirement of the statute is set forth, although in general terms as to some essentials. Great reliance is placed by appellant on State v. Howard, 66 Minn. 309, 68 N. W. 1096, 34 L. R. A. 178, 61 Am. St. Rep. 403, and it is claimed that the informations are similar, and that that decision should govern this case. In that case the information was demurred to, which is sufficient ground to warrant a different decision in the case at bar.

The principal evidence against the defendant at the trial consisted of a letter written by him to Olson. In fact, so far as the offer of the alleged bribe is concerned, the letter constituted all the evidence bearing on the question until the defendant gave his own testimony. The letter referred to is as follows:

"Carrington, N. D., July 26, 1905. Mr. Edwin Olson, Leeds, N. D.—Dear Sir: Your letter to Mr. A. M. Burt, superintendent N. P. R. Co. was handed to me as contractor for the Co. In regard to the taxes, should have been attended to before, but got letter today. As I understand you are the overseer in your district, it will be an easy matter for you to take this. Nobody will ever

know anything more about it. It is the way we are doing with all. Have only left in your township ———. I herewith inclose you a check for $75, and receipt to sign as road overseer. You might work out some, you know, and then you have until fall to work it in, hoping this will be satisfactory, I am your truly, Elias Johnson, Carrington, N. D., Box 305.

"Please put valuation in the space."

While the defendant was on the witness stand, his counsel asked him the following questions, which the state objected to, and the court sustained the objections: "Q. You may look at Exhibit 1, and tell the jury what you intended to do in writing that letter. (Objected to on the grounds that the letter speaks for iteslf. Sustained. Exception.) Q. Now, at the time you sent this receipt, did you expect that receipt back before the work was done?" "Q. In that statement in the letter where you say, 'This is the way we do it with all,' what did you mean by that statement?" Q. Did you mean by that statement that you let it out to people on that percentage or basis?" "Q. Was the amount you sent Olson in this letter an amount slightly lower than the contract you took it for?" "Q. In writing that letter to Olson, did you intend by that to make a contract with him to do the road work in the west half of this township?" "Q. Did you have any other intention in writing that letter than to make a contract to do this road work?" "Q. What was your object in writing that letter and sending that receipt and check to Olson?" "Q. Tell the jury in your dealings with Mr. Olson what kind of a deal you calculated to make with him?" Many other questions of similar import were asked, and the answers excluded under objections from the state. These other questions are not now set forth, for the reason that the exclusion of the answers was rendered without prejudice by reason of the fact that full answers to the questions were given by the defendant in his testimony later.

There are several statements in the letter which have no unequivocal meaning. That the defendant should be permitted to explain such statements and state what was the meaning intended to be conveyed is too patent to require further observation. Even in case of statements in the letter that may seem to impart but one meaning to a reader thereof, or to a juror, we think the fullest latitude should be allowed for statements or explanations by the accused as to what was intended by him. It is what the defendant

actually meant that is the test of criminality, and not what the expressed words may seem to convey when read by others. We think the following expresses the correct rule as to the latitude to be allowed on the examination of those accused of crime while testifying: "He must be permitted, on his direct examination, to explain his conduct and declarations as he has testified to them, or as they have been described by other witnesses. He must be permitted fully to unfold and explain his actions, and to state the motives which he claims prompted them. It is within certain limits relevant for him to state what intention was present in his mind when he participated in a transaction which is in issue. And the jury are the sole judges to determine whether the defendant's statement is false. * * * They must consider it in connection with all the evidence. The inference which they draw from it may be strong enough to overcome any conclusion of guilty intention which they may draw from his other acts or declarations." Section 59, Underhill on Criminal Evidence; State v. Tough, 12 N. D. 425, 96 N. W. 1025; People v. Quick, 51 Mich. 547, 18 N. W. 375; State v. Montgomery, 65 Iowa, 483, 22 N. W. 639; People v. Farrell, 31 Cal. 576; Ross v. State, 116 Ind. 495, 19 N. E. 451; State v. King, 86 N. C. 603. That it was error to exclude the answers to these questions is not seriously denied by the state, but the contention is that the error was rendered harmless in view of the defendant's testimony that was admitted after the objections were sustained. A careful reading of that testimony discloses that the questions called for answers concerning matters not at all covered by the defendant's testimony. This is especially true of the questions that referred to the kind of deal that he intended to make, and what he meant by the expression, "this is the way we do it with all," and whether he intended making a contract with Olson to do the road work in the west half of the township.

The following is all of the testimony of the defendant as shown by the record: "I meant to hire anybody to work out the taxes for the railroad company, and pay them as much or as little as I could. My object has been to let out these contracts to parties who will take them for the least possible compensation. I wrote that letter because he was the only man I had, and I thought he would know the farmers or anybody there that probably would help me out with him to do the work; that is the only name I had. At the time I wrote that letter, it was my intention to employ him to do that work

if I could.   I did not afterwards hear from Olson in regard to that work.   I had nothing further with Olson in regard to getting that work done, except that I wrote him a card.   I intended, when I wrote that letter to Olson, that he should work out the company taxes.   I did not intend at the time I wrote that letter, to have Olson give me receipt without doing any work on the road.   My object in writing that letter was because I thought I would save expense by not going up there.   I sent him the check in that letter as a guaranty of good faith.   I didn't expect him to start doing the work without having some kind of guaranty that he was to have the money.   I had never seen Olson.   I didn't know him, and I sent this for the reason I didn't know him, and he didn't know me. In sending that check and letter and receipt to Olson, I did not intend to influence him in any way in the performance of his duty as road overseer."   It seems clear that the defendant was restricted within a too narrow compass in explaining his purpose, and what he meant by the above equivocal expressions of the letter.   The evidence called for was competent, relevant, and material, and its exclusion was prejudicial and reversible error without an independent offer of proof.

The judgment is reversed, a new trial granted, and the cause remanded for further proceedings.   All concur.