(November 27, 1915.)

STATE, Respondent, v. J. A. GIVENS, Appellant.

[152 Pac. 1054.]

ALLEGED FALSE REPORT TO STATE BANK COMMISSIONER—SEC. 82, CHAPTER 124, SESS. LAWS 1911, P. 411—SUFFICIENCY OF EVIDENCE TO WARRANT CONVICTION—ERRORS IN ADMITTING AND EXCLUDING TESTIMONY—PREJUDICIAL REMARKS OF PROSECUTING ATTORNEY.

1. In order to warrant the conviction of a defendant charged under sec. 82, chapter 124, 1911, Sess. Laws, p. 411, with making a false report, it must be proved beyond a reasonable doubt that a false report of the financial condition of the bank was made, and that the defendant knew the report to be false at the time it was made.

[As to state regulation of private banking, see note in Ann. Cas. 1914A, 171.]

2. *Held*, that respondent in this case failed to establish by competent evidence that the report made by appellant to the state bank commissioner was false, in that it failed to show the true financial condition of the Bank of Nampa as disclosed by the books of the bank, and that the appellant knew the report to be false at the time it was made and attested.

3. Where the knowledge, intention or good faith of a party to an action becomes material, it may be shown directly as well as from circumstances, and the party himself, if a competent witness, may testify directly to his intention or understanding, unless prevented by some other principle of law applicable to the particular case. *Held*, that it was reversible error for the trial court to prevent the appellant from testifying fully to all conversations had between him and the state bank commissioner at the time he presented to said state official the report of the financial condition of the bank of Nampa.

4. *Held*, that the action of the trial court in permitting the prosecuting attorney to make certain remarks in his final argument to the jury, when considered in connection with other errors committed by the court in the trial of this cause, was highly prejudicial to the substantial rights of appellant, and constituted reversible error.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. Ed. L. Bryan, Judge.

Prosecution for making false report of the financial condition of a state bank. Judgment of conviction. *Reversed.*

Hawley & Hawley, Jackson & Walters and R. L. Givens, for Appellant.

Where there is no material conflict and the proof offered is capable of two constructions, one of which is compatible

On the right of one to testify as to his intent, see notes in 23 **L. R. A., N. S.,** 367; 34 **L. R. A., N. S.,** 323.

with innocence, the defendant should be released. (*State v. Nesbit*, 4 Ida. 548, 43 Pac. 66; *State v. Howser*, 12 N. D. 495, 98 N. W. 352; *State v. Seymour*, 10 Ida. 699, 79 Pac. 825.)

"Where a criminal intent is a necessary ingredient of the offense and it appears from the circumstances that such intent did not exist, no issue of fact proper to go to the jury is raised." (*United States v. Corbett*, 215 U. S. 233, 30 Sup. Ct. 81, 54 L. ed. 173.)

A man cannot be convicted of a felony and have visited upon him the disgrace and humiliation of incarceration in the state penitentiary for a mere difference of opinion in regard to bookkeeping. (*Graves v. United States*, 165 U. S. 323, 17 Sup. Ct. 393, 41 L. ed. 732; *Potter v. United States*, 155 U. S. 438, 15 Sup. Ct. 144, 39 L. ed. 214.)

"Money paid in pursuance of a prior agreement resting on abundant credit, though it overdraws a person's account in the bank, is recognized and as clearly justified as any other kind of a loan." (*United States v. Steinman*, 172 Fed. 913, 97 C. C. A. 271; 5 Johnson's Modern Business, p. 266; Barrett on Modern Banking Methods, pp. 146, 147; Daniel on Negotiable Instruments, sec. 1650.)

"It was not the purpose of the legislature to punish an officer who, through an honest mistake, makes an entry in one of the books, or reports of the bank which he believes to be true when it is in fact false." (*State v. Jackson*, 20 S. D. 305, 105 N. W. 742; *State v. Mason*, 61 Kan. 102, 58 Pac. 978, at 981; *Bacon v. United States*, 97 Fed. 35, 43, 38 C. C. A. 37.)

Items indorsed as in the case at bar become the property of the bank and are properly reported as assets due from banks. (*First Nat. Bank v. Hughes*, 5 Cal. Unrep. 454, 46 Pac. 272; *Gregg v. Bi-Metallic Bank*, 14 Colo. App. 251, 59 Pac. 852; *Union Nat. Bank v. Citizens' Bank*, 153 Ind. 44, 54 N. E. 97; *Harris v. Randolph County Bank*, 157 Ind. 120, 60 N. E. 1025, 1032; *Cochran v. United States*, 157 U. S. 286, 15 Sup. Ct. 628, 39 L. ed. 704.)

The mere failure to make an entry constitutes no false entry, and though there appeared no cashier's checks upon the general ledger, and there were in truth what amounted to cashier's checks outstanding, this is not a false entry. (*Goll v. United States,* 151 Fed. 412, 80 C. C. A. 642; *Hayes v. United States,* 169 Fed. 101, 94 C. C. A. 449; *United States v. Young,* 128 Fed. 111.)

In cases of this kind an attesting director cannot be held criminally responsible for any defects in the report. (*Gerner v. Mosher,* 58 Neb. 135, 78 N. W. 384, 46 L. R. A. 244.)

The party charged must have in person made the false entry or have directed the party actually making the entry which is alleged to be false before becoming criminally liable. (*United States v. McClarty,* 191 Fed. 523; *United States v. Norton,* 188 Fed. 256.)

"Facts or circumstances should be developed tending to connect the defendant with the commission of the offense such as would be inconsistent with the actions and conduct of an innocent man." (*State v. Vogel,* 23 Ida. 786, 132 Pac. 107; *United States v. Wilson,* 176 Fed. 806.)

"If the return must be founded on the books of the bank and contain a true statement of its condition, the law is observed when the return is substantially true, although it may be not indicated by bank books." (5 Cyc. 486; *Commonwealth v. Dunham,* Thacher Crim. Cas. (Mass.) 513, 519; *Bank of British North America v. Alaska Imp. Co.,* 97 Cal. 28, 31 Pac. 726.)

Defendant is entitled to a rigid and thorough examination of any witnesses, and in so doing may put leading questions. To refuse such requests is prejudicial error. (*State v. Webb,* 6 Ida. 428, 55 Pac. 892; Wharton on Crim. Evidence, sec. 458; *White v. Dinkins,* 19 Ga. 285; 3 Ency. of Evidence, 819, and note 76.)

"The rule is quite liberal in allowing a broad range of inquiry on cross-examination, and this rule is particularly applicable when it comes to the cross-examination of that class of witnesses commonly called experts." (*Trull v. Modern Woodmen of America,* 12 Ida. 318, 85 Pac. 1081, 10

Ann. Cas. 53; *People v. Sutton*, 73 Cal. 243, 15 Pac. 86;
*West Chicago St. Ry. Co. v. Fishman*, 169 Ill. 196, 48 N. E.
447, at 449; *Dilleber v. Home Life Ins. Co.*, 87 N. Y. 79;
*Louisville etc. Ry. Co. v. Falvey*, 104 Ind. 409, 3 N. E. 389,
4 N. E. 908; *Kelly v. Telephone Co.*, 34 Minn. 321, 25 N. W.
706; 1 Thomp., Trials, sec. 631.)

"Permitting the prosecuting attorney on cross-examination
of defendant to ask, under objection, a question not related
to or pertinent to the issue, or involved directly or indi-
rectly in the offense for which defendant was on trial, and
which was calculated to unduly prejudice him in the minds
of the jury, is sufficient error to warrant a reversal of a
judgment of conviction." (*Clarke v. State*, 78 Ala. 474,
56 Am. Rep. 45; *People v. Derbert*, 138 Cal. 467, 71 Pac. 564;
*State v. Irwin*, 9 Ida. 35, at 40, 71 Pac. 608, 60 L. R. A.
716; Wharton's Crim. Evidence, secs. 475, 987.)

When a defendant takes the stand, he should be allowed
the widest latitude in the matter of explaining the reason
for his acts as well as detailing the acts themselves. (*Com-
monwealth v. Kennedy*, 170 Mass. 18, 48 N. E. 770; *Grenell
v. Michigan Cent. R. Co.*, 124 Mich. 141, 82 N. W. 843;
Wigmore, Ev., sec. 655; *Cole v. Lake Shore & M. S. Ry. Co.*,
105 Mich. 549, 63 N. W. 647; *State v. Jones*, 25 Ida. 587,
603, 138 Pac. 1116; *State v. Johnson*, 17 N. D. 554, 118
N. W. 230; *State v. Johnston*, 26 Ida. 609, 144 Pac. 784;
*Petajaniemi v. Washington Water Power Co.*, 22 Ida. 20,
124 Pac. 783; *Commonwealth v. Anderson*, 220 Mass. 142,
107 N. E. 523.)

In cases of this kind, the custom or usage, or the defend-
ant's understanding of the custom or usage, is proper evidence
to go to the jury, and it is error to exclude such evidence
together with the facts and circumstances surrounding
the same. (*Conner v. Citizens' St. R. Co.*, 146 Ind.
430, 45 N. E. 662; *Laurie Co. v. McCullough*, 173 Ind. 477,
90 N. E. 1014, at 1017, Ann. Cas. 1913A, 49, 92 N. E. 337;
*Harrison v. Birrell*, 58 Or. 410, 115 Pac. 141.)

"Questions on cross-examination eliciting testimony which
merely tends to prejudice and excite the passions of the

jury against the opposite party transcend the limits of a proper cross-examination.'' ˙ (3 Ency. of Evidence, 814, note 57; *Laidlaw v. Sage,* 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216; *Hancock v. Blackwell,* 139 Mo. 440, 41 S. W. 205; *Howland v. Oakland Consolidated St. Ry. Co.,* 115 Cal. 487, 47 Pac. 255; *Leo v. State,* 63 Neb. 723, 89 N. W. 303; *State v. Lurch,* 12 Or. 99, 6 Pac. 408; *People v. O'Brien,* 66 Cal. 602, 6 Pac. 695.)

Prejudicial remarks in closing argument by prosecuting attorney warrant a reversal. (*State v. Moon* (Iowa), 148 N. W. 1001; *State v. Coyle,* 41 Utah, 320, 126 Pac. 305, 370; *State v. Irwin,* 9 Ida. 35, 71 Pac. 608, 60 L. R. A. 716; *People v. Fielding,* 158 N. Y. 542, 70 Am. St. 495, 53 N. E. 497, 46 L. R. A. 641, note; *McDonald v. People,* 126 Ill. 150, 9 Am. St. 547, 559, 18 N. E. 817; *Leo v. State,* 63 Neb. 723, 89 N. W. 303, and cases cited.)

''Rebukes do not seem to have any effect upon prosecuting officers, and probably as little upon juries. The only way to secure fair trials is to set verdicts so procured aside.'' (*People v. Valliere,* 127 Cal. 65, 59 Pac. 295; *State v. Rodriguez,* 31 Nev. 342, 102 Pac. 863; *State v. Gruber,* 19 Ida. 692, 115 Pac. 1.)

''The authorities are uniform in holding any statement improper that is calculated to inflame the minds of the jurors, arouse their prejudice, or appeal to their passions.'' (*Watson v. State,* 7 Okl. Cr. 590, 124 Pac. 1101; *Flege v. State,* 93 Neb. 610, 142 N. W. 276, 47 L. R. A., N. S., 1106; *State v. Harness,* 10 Ida. 18, 76 Pac. 788.)

J. H. Peterson, T. C. Coffin and Herbert Wing, for Respondent.

As to whether or not the overdrafts were secured by collateral deposited for that purpose, or had been previously arranged for by the depositor, is a matter peculiarly within the knowledge of the defendant, and such being the case, the burden is upon him to establish the fact that they had been arranged for, as a defense. (Jones on Evidence, 2d. ed., sec. 181.)

In the case of *State v. Cutts,* 24 Ida. 329, 133 Pac. 115, the evidence was undisputed that Mr. Cutts did not know what was in the report, that he signed the same solely because he was ordered to do so by his superior officer, and because he had faith in that superior officer. The case is analogous to the case at bar. It was the signing of that report by Cutts which made possible its acceptance by the bank commissioner, and which justified its publication as showing the true condition of that bank. In the case at bar, it was necessary that the report be attested by at least two directors to give it force as a report. (Banking Law, sec. 82; Laws 1911, p. 411.)

The cases cited by the appellant upon this proposition will be found to be all distinguished by the statute under which they were rendered; the federal cases cited being upon a statute vitally different from that in the case at bar, as was decided by this court in the Cutts case.

BUDGE, J.—The defendant, J. A. Givens, was indicted, tried and convicted in the district court of the seventh judicial district of the crime of wilfully, unlawfully, knowingly, feloniously and fraudulently making a false report of the affairs, financial condition and property of the bank of Nampa, as of April 4, 1913, and sentenced to the state penitentiary for not less than six months nor more than three years. Motion for a new trial was denied. This appeal is from the order denying a new trial and from the verdict and judgment.

The appeal is based upon the insufficiency of the evidence, erroneous admission and exclusion of evidence, unjustifiable and prejudicial remarks of the prosecuting attorney in the final argument and instructions improperly given and refused. There are seventy-four assignments of error, all of which, however, will not be discussed by this court. We have carefully gone through the entire record.

The appellant was charged with having reported to the state bank commissioner loans and discounts $375,717.36, instead of $371,833.79 as shown by the general ledger of

the bank of Nampa, or a difference of $3,883.57. This latter amount respondent insists was overdrafts and should have been so reported. The appellant in explanation of said item testified that it consisted of loans previously arranged for, and this item when added to the amount that appears upon the general ledger as loans and discounts totals the amount reported to the state bank commissioner.

There is no difference between the contention of the respondent and of the appellant so far as this $3,883.57 is concerned, except as to classification. Respondent insists that it should have been reported as an overdraft; appellant insists that it was properly reported as a loan, having been previously arranged for. But whether for the purpose of the report we consider this amount as a loan or an overdraft, it was an account actually due and a resource of the bank; and as between the bank and its customers, when previously arranged for, the amount was a loan. Where a party prior to withdrawing money from the bank arranges for such a loan, even though a note is not at the time given, but the customer agrees to subsequently give his note, this transaction constitutes a loan for the purpose of furnishing temporary credit. (5 Modern Business, by Jos. T. Johnson, p. 266.)

Daniel on Negotiable Instruments, sec. 1630, states: "It is undoubtedly in the power of the bank to authorize over-checks, or checks without any funds whatever, upon negotiations with the drawer. Such dealing would be in the nature of a loan; and the bank would be bound, if the arrangements were consummated, upon a legal contract."

The report to the state bank commissioner showed $41,055.85 due from banks. The general ledger showed only $34,582.61, a difference of $6,473.24. This latter amount is explained by appellant and the cashier of the bank as being made up of what they termed live collections and placed to the credit of the bank of Nampa by the banks through which the collections were made, and consisted of two collections made through the Corn Exchange National Bank of Chicago and one through the First National Bank of

St. Anthony. For the amount of these collections cashier's receipts were issued to the customers of the bank who turned the amounts in for collection, and these items appear upon the report as cashier's checks outstanding. Respondent insisted that these items, aggregating $6,473.24, were not due from banks; while, on the other hand, appellant maintained that under instructions previously given him by a former bank commissioner said items were proper to be listed under amounts due from banks. It will be seen that by adding this $6,473.24 to the sum due from banks as shown by the general ledger, the total corresponds with that reported to the state bank commissioner.

This $6,473.24, being the item due from banks which is contended against by respondent, was considered by the officers of the bank as a liability of the bank and listed in the report to the state bank commissioner as cashier's checks outstanding. There is evidence in the record to the effect that a former bank commissioner had instructed the officer of the bank to handle live collections in the way these were handled; and from the testimony of appellant and other officers of the bank it is fairly inferable that before listing these collections as money due from banks they had received information from the banks through which the collections were to be paid, and through which they were subsequently paid, that upon receipt of certain instruments held by the bank in escrow with sight drafts attached the money would be placed to the credit of the bank of Nampa. The bank of Nampa, considering itself liable, forwarded the instruments together with sight drafts, and immediately listed said amount as money due from banks and as a resource of the bank, and charged themselves with said amount in cashier's checks outstanding. Upon receipt of the collections in the ordinary course of business, the individual customers of the bank were given credit upon the individual ledger for those amounts.

In this instance, also, the only difference between the contentions of respondent and of appellant as to this $6,473.24 item is that respondent insists it should not have been in-

cluded in the amount due from banks until it had been actually paid to the bank of Nampa, while appellant insists that, according to instructions received from a former bank commissioner and the understanding of the officers of the bank, this item is properly included as money due from banks. In short, it is a difference of opinion as to classification of accounts or the method of keeping accounts.

The next contention of respondent is as to the incorrectness of the report to the state bank commissioner in the following items:

The report shows an item of checks and other cash items $2.25 and an item of exchange for clearing-house $273.42, both of which respondent contends are incorrect, as the books of the bank show the amount of checks and other cash items on hand as of April 4, 1913, to be $1,912.97, and do not show any entry of exchange for clearing-house. Thus a discrepancy is created of $1,637.30 for these two items. The item of gold coin is shown on the report as $5,850; whi'э the books of the bank show the amount of this item to be $7,670, indicating a discrepancy between the books of the bank and the report of $1,820. The item of silver dollars and fractional coin is shown on the report as $3,232.50; while on the books of the bank this item is shown to be $5,372, or a difference of $2,139.50. The item of nickels and cents is shown on the report as $520, while the books of the bank show this item to amount to $560.20; a difference of $40.20. Lastly, the item of U. S. national currency is shown on the report as $11,058, but on the books of the bank it is shown as $5,421, a discrepancy or over-report of $5,637.

From a study of these various items appearing on the report and as shown by the books of the bank it will at once appear that the discrepant amounts of the first five items, which were all less than the amount that was actually on hand in the bank, were added to the amount of U. S. national currency shown by the books of the bank to make up this latter item on the report. In other words, the total money on hand as reported to the state bank commissioner corresponds with the total amount on hand as indicated by

the books of the bank; but in the report these amounts are classified in a manner different from that of the books.

The method adopted by appellant in the preparation of the report did not materially change the condition of the bank's reserve as provided for under sec. 39, chapter 124, Sess. Laws 1911, p. 399. There was due from good solvent banks at the date of the report nine per cent of the total deposits of the bank of Nampa, which was all that was required under the law; and the irregularity in listing the various amounts, as was done by appellant, did not bring the actual cash in the vault up to the six per cent of the aggregate deposits required by law, by something less than one-half of one per cent. Therefore, it would appear that the report to the state bank commissioner did not result in deceiving him as to the true condition of the bank's reserve, and would hardly furnish sufficient evidence of motive on the part of the appellant to deceive the bank commissioner in this respect.

Respondent has insisted all the way through in this case that the report made to the bank commissioner was false, for the reason that it did not correspond with the general ledger and, therefore, fails to show the true condition of the bank. Not being expert bankers nor certified public accountants, we are not in a position to affirm or contradict this theory so strenuously urged by respondent; but we hazard the suggestion that the true condition of no bank in the state could be determined by reference to the general ledger alone.

It must be admitted that the methods adopted by the officials of the bank of Nampa in keeping the accounts of the bank were subject to explanation and not such as with safety to depositors could be universally adopted by other banks in the state. Yet, however irregularly the books of the bank. may have been kept, that fact alone would not justify a conviction of appellant of wilfully and feloniously making a false report of the condition of the bank. In order to warrant a conviction of appellant of the offense with which he stands charged, it must be proved beyond a reasonable doubt

that he made or attested a false report of the condition of the bank of Nampa, and that he knew such report to be false when he made it.

In the case of *State v. Mason*, 61 Kan. 102, 58 Pac. 978, it was held that "It was not the purpose of the legislature to punish an officer who, through an honest mistake, makes an entry in one of the books or reports of the bank which he believes to be true when it is in fact false. It follows, therefore, that, in order to convict the defendant, you must find that he not only made a false entry in one of the books or reports of the bank, but also that he knew the entry to be false when he made it." (See, also, *State v. Jackson*, 20 S. D. 305, 105 N. W. 742.)

In this connection it is contended by counsel for appellant that the court erred in refusing to permit appellant to answer certain questions propounded to him for the purpose of enabling him to explain his acts concerning the attesting of the report, which questions are embraced in specifications of error 54, 57, 58 and 59, as follows:

"Q. I will go into this matter of the trip to Boise after the report of April 4th. I understand you to say that you saw the commissioner after this report of April 4th."

This was objected to on the ground that it was immaterial, and the objection was sustained.

"A. As I recall, after the report of April, 1913, I went to Boise to see the commissioner with reference to that report and took the report with me in order to give it to him, and to question him in regard to the proper method of dealing with overdrafts or overdrawn accounts. I saw Mr. Reid at that time."

"Q. What was said and done with reference to this matter between you and Mr. Reid?

Objected to by the respondent as immaterial, and the objection sustained.

"Q. You may state in the matter of this report of April 4, 1913, and these other reports introduced, whether you were at any time acting, as far as you were concerned with them,

with any intent to deceive the bank commissioner, the public or any person whomever.

"A. There was absolutely no intention to deceive anyone. So far as the bank commissioner was concerned, all of these items were in the books."

Objected to as not responsive, and the objection sustained and the answer of appellant stricken.

"A. This bank statement I mentioned of April 4, 1913, I took over to Boise with me. It had not been sent before.

"Q. You may state your conversation with the bank commissioner after taking this report and delivering it to him."

Objected to as immaterial, and objection sustained.

"Q. Did you have a conversation with the bank commissioner before actually delivering the report of April 4, 1913, into his hands?"

Objected to as incompetent, irrelevant and immaterial, and the objection sustained.

Appellant should have been permitted to answer each and all of these questions fully; and it was prejudicial error for the court to refuse to permit counsel to elicit from appellant all conversations had between him and the bank commissioner with reference to the report at the time it was carried to Boise. It might be safely presumed that had appellant made misrepresentations of the condition of the bank to the bank commissioner at the time of their conversation respondent would have introduced such evidence. Therefore, it is only fair to assume that the conversation had between appellant and the bank commissioner was of such a nature as to fully inform the latter of the details of the report, and that the various items which it is contended were incorrectly listed were fully explained to the bank commissioner and not objected to by him. If appellant made a full statement to the state bank commissioner of the true financial condition of the bank of Nampa at that time, he could not be legally convicted of making a false report upon the theory that it was done with an intent to deceive the bank commissioner.

We think there is no doubt that the authorities universally agree that wherever the motive, intention or belief of a person is relevant to the issue, it is competent for such person to testify directly upon that point. Or, stated differently, when the motive of a witness in the performance of a particular act or in making a particular declaration becomes a material issue, he may himself be sworn in regard to it, notwithstanding the diminished credit to which his testimony may be entitled as coming from the mouth of an interested witness. The rule thus stated is applicable to the right to testify in civil, *quasi*-criminal and criminal cases. (*State v. Jones,* 25 Ida. 587, 138 Pac. 1116.)

In *Delano v. Goodwin,* 48 N. H. 203, 97 Am. Dec. 601, it was held that "where the intention or good faith of a party to a suit becomes material, it may be shown directly as well as from circumstances; and the party himself, if a competent witness, may testify directly to his intention, or understanding, unless prevented by some other principle of law applicable to the particular case."

In the case of *State v. Johnson,* 17 N. D. 554, 118 N. W. 230, the court said: "It is what the defendant actually meant that is the test of criminality, and not what the express words may seem to convey when read by others. We think the following expresses the correct rule as to the latitude to be allowed on examination of those accused of crime while testifying: 'He must be permitted, on direct examination, to explain his conduct and declarations as he has testified to them, or as they have been described by other witnesses. He must be permitted fully to unfold and explain his actions, and to state the motive which he claims prompted them. It is within certain limits relevant for him to state what intention was present in his mind when he participated in a transaction which is in issue. And the jury are the sole judges to determine whether the defendant's statement is false. . . . . They must consider it in connection with all the evidence. The inference which they draw from it may be strong enough to overcome any conclusion of guilty in-

tention which they may draw from his other acts or declarations.' '' (*State v. Johnson*, 26 Ida. 609, 144 Pac. 784.)

Under these authorities, it is clear that it was reversible error in the trial court to prevent appellant from explaining any and all acts done by him, or under his direction, with reference to the report in question, and to relate all conversations had with the bank commissioner concerning said report at or prior to the filing thereof, for the purpose of proving whether the report was false and whether appellant wilfully and knowingly made a false report.

The following remarks made by the prosecuting attorney in his final argument to the jury are assigned by appellant as error, and as highly prejudicial to his substantial rights: ''That the interest on the amount loaned out by J. A. Givens was put down in his pocket for his own personal use.''

Appellant contends that this imputed an embezzlement to him, predicated upon no evidence and calculated only to inflame the minds of the jury and thus deprive him of a fair trial. There is no evidence in the record that appellant misappropriated the funds of the bank—in fact, it is conceded by respondent that he did not. Furthermore, it is not contended by respondent that appellant retained or misappropriated any of the funds of the Nampa & Meridian Irrigation District, of which he was the treasurer, or that he embezzled interest due or belonging to the Nampa Bank or the Nampa & Meridian Irrigation District, or in any way profited personally by reason of the failure of the bank. It is conceded that appellant and his family owned a majority of the stock of the bank. Yet the whole record, which we have read and reread, utterly fails to show any possible motive on the part of appellant to bring about the failure of the bank.

That the bank's books were kept and its business conducted in an inefficient manner, the record leaves no doubt in the minds of the court, but appellant could not be legally convicted for incompetency; and in order to be convicted at all, he must be clearly proved to be guilty of the crime with which he is charged.

The failure of a bank in any community naturally creates a sentiment unfriendly toward officers of the institution, as it in all cases works a serious hardship upon most of the depositors. Therefore a remark such as that made by the prosecuting attorney in this case would have its influence upon the minds of the jury, and could well be conceived to have been one of the elements which went to make up the verdict of guilty.

It is not necessary for the court to find, nor would it be possible to determine, that these remarks were the controlling factor in causing the jury to decide that appellant was guilty of making a false report; but if these remarks, being improper because they were not based upon any testimony in the case, tended to influence the jury, they were prejudicial to appellant.

Appellant was charged with a specific offense and was on trial for the crime charged in the information. Therefore, we think that any evidence of his dealings with the Nampa & Meridian Irrigation District in his official capacity as treasurer thereof was improperly admitted, for the reason that it did not show, nor tend to show, his guilt in making a false report of the affairs of the bank of Nampa.

It is the duty of the prosecutor to see that a defendant has a fair trial, and he should never seek by innuendo or inference to pervert the testimony, or make statements to the jury which, whether true or not, have not been proved. The desire for success should never induce him to obtain a verdict by argument based upon anything except the evidence in the case and the conclusions legitimately deducible from the law applicable to the same. (*State v. Irwin,* 9 Ida. 35, 71 Pac. 608, 60 L. R. A. 716.)

While standing alone, the remarks of the prosecuting attorney in accusing appellant of a crime with which he was not charged in the information might not be sufficient to warrant this court in granting appellant a new trial, yet when considering them in connection with other errors appearing in the record, we feel justified in our conclusions that the appellant in this case did not have a fair trial.

From what has been said it follows that we have reached the conclusion that there is not sufficient competent evidence in the record to sustain the verdict and judgment of the trial court; that the court erred in refusing to admit testimony of appellant in explanation of his acts and conversations had with the state bank commissioner; that the court erred in permitting the prosecuting attorney in his argument to accuse appellant of a crime with which he was not charged in the information; and that the court erred in admitting evidence over the objection of appellant of the business transactions between appellant and the Nampa & Meridian Irrigation District, which in no way proved or tended to prove the charge contained in the information, and which could serve no purpose other than to prejudice the minds of the jury against appellant.

For these and numerous other errors occurring in the trial of this case, which we will not discuss here, we have concluded that the trial court should be directed to set aside the judgment of conviction and grant appellant a new trial, and it is so ordered.

Sullivan, C. J., and Morgan, J., concur.