**Josue Jonnathan PENA, Appellant,**

v.

**STATE of Texas, Appellee.**

**Nos. 11-02-00259-CR, 11-02-00260-CR, 11-02-00261-CR.**

Court of Appeals of Texas, Eastland.

April 17, 2003.

Rehearing Overruled May 8, 2003.

---

Don Richard, Attorney At Law, Big Spring, for appellant.

Hardy L. Wilkerson, District Attorney, Big Spring, for appellee.

Panel consists of: ARNOT, C.J., and McCALL, J., and DICKENSON, S.J.*

Opinion

BOB DICKENSON, Senior Justice (Assigned).

After a joint trial of three indictments, the jury convicted Josue Jonnathan Pena of three sexual assaults of M.A.,[1] a child who was younger than 17 years of age.[2] The jury assessed appellant's punishment in Cause No. 11–02–00259–CR (penetration of the anus) at confinement for 6 years and a fine of $1,000, in Cause No. 11–02–00260–CR (penetration of the female sexual organ) at confinement for 3 years and no fine, and in Cause No. 11–02–00261–CR (penetration of the mouth) at confinement for 3 years and no fine. The trial court ordered the sentences to be served consecutively.[3] We affirm.

### Background Facts

The indictments charged that appellant committed the offenses in Howard County on or about December 6, 2001, and that the child was then younger than 17 years of age and not his spouse. The child made a positive identification of appellant, and the State's expert witness testified that the DNA sample which was found on a pad from the "sexual assault kit" from the complainant was consistent with the DNA profile from appellant and that appellant could not be excluded as a contributor of that DNA. The State's expert also gave her opinion that appellant was the source of the semen found after the complainant was assaulted. The sexual assault nurse examiner testified that she made a physical examination of M.A. which showed that the child's anus had been recently dilated and torn, indicating a recent penetration of the anus. The sexual assault nurse examiner also testified that the physical examination of M.A. showed a laceration of the hymen which was evidence of "a violent penetration of the vagina."

After the State rested, appellant took the stand to deny the child's claim that he forced her to get into his car and that he forced her to submit to the sexual contacts. Appellant claimed that the complainant got into his car voluntarily, that the complainant gave him "oral sex" while he was driving, and that they had consensual intercourse after he parked by some trees. Appellant also testified that M.A. told him that she "was 17, almost 18 years old" and that he did not penetrate her anus. Appellant claimed that M.A. got mad at him when he refused to give her money and

---

* Bob Dickenson, Retired Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. The child will be identified by her initials only.

2. See TEX. PENAL CODE ANN. § 22.011(a)(2) (Vernon 2003). It is a felony of the second degree to cause the penetration of the anus, female sexual organ, or mouth of a child. A "child" is a person younger than 17 years of age who is not the spouse of the defendant.

3. See TEX. PENAL CODE ANN. § 3.03(b)(2)(A) (Vernon 2003). The sentences can run consecutively if they are for offenses under Section 22.011(a)(2).

when he would not give his telephone number to her.

## Points of Error

Appellant presents the same seven points of error in all three briefs. He argues that the trial court erred: (1) in failing to allow him to present evidence that M.A.'s reputation for truthfulness was not good; (2) in not allowing him to prove why M.A. had moved from her parents' home in Lamesa to her brother's home in Big Spring; (3) in failing to excuse the juror, Irma Morales, "at the time she made it known" that she knew members of M.A.'s family and that she would have a hard time giving appellant a fair trial; (4) in failing to allow appellant's lawyer to "inquire further of the juror, Irma Morales," concerning her knowledge of M.A. and M.A.'s family; (5) in not allowing appellant's lawyer to "question Irma Morales about her conversations with other jurors before her discharge"; and (6) in denying his motion for mistrial "based on the fact that some jurors could not hear testimony during the trial." Appellant argues in Point of Error No. 7 that the trial court abused its discretion in ordering the sentences "to run consecutively" because there was "no basis for stacking the sentences."

## Reputation of Child

■ Appellant argues in Point of Error No. 1 that the trial court erred in not allowing him to present evidence that "the victim's reputation for truthfulness was not good." The record shows that appellant's attorney called Dena Jefferson as a witness, that this witness had known M.A. for two years, that they had gone to school together at Lamesa High School, and that the witness said that she knew M.A.'s reputation in the community. The State ob-

jected, and the following proceedings were conducted outside the presence of the jury:

[DEFENSE COUNSEL]: Ms. Jefferson, do you know [M.A.]?

A: Yes.

Q: Do you know her reputation in the community?

A: Yes.

Q: Do you have an opinion about her reputation with regard to being a truthful person?

A: Yes.

Q: What is your opinion?

A: *I think she's lying.* (Emphasis added)

Appellant's attorney argued to the court that "the character of [M.A.] is in question," that TEX.R.EVID. 405 permits him to offer this proof, and that he "would like that to be the bill of exception." After it sustained the State's objection and excused the witness, the court permitted appellant's attorney to recall Jefferson "for purposes of the bill of exceptions." Her additional testimony still did not show the reputation of M.A. It only showed Jefferson's opinion that M.A. "lies to get what she wants." It did not show that this was the "reputation" of M.A. in the community. Trial courts are given "great discretion" in their evidentiary decisions, and appellant has not shown an abuse of that discretion. See *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991). Point of Error No. 1 is overruled.

## Reason for Move from Lamesa

■ Angelica Arredondo was called as a witness by the State, and she testified through an interpreter that M.A. was living with her family on December 6, 2001. During the cross-examination of this witness by appellant's attorney, Arredondo testified that M.A. had been living with M.A.'s parents in Lamesa before M.A.

came to Big Spring to stay with Arredondo, M.A.'s brother, and their children. Relevant portions of the reporter's record read as shown:

Q: [M.A.] was living with her own natural, biological parents before coming to stay with you, correct?

A: Yes, sir.

Q: And [M.A.] was having trouble?

[PROSECUTOR]: Objection, Your Honor; personal knowledge. No foundation has been laid on that.

THE COURT: Sustained.

After the jury was removed from the courtroom, the prosecutor asked the following questions on voir dire examination of the witness:

Q: Do you know why [M.A.] came to Big Spring? Yes or no.

A: Yes.

Q: Okay. Why?

A: I don't know. I mean, I cannot explain.

* * *

THE INTERPRETER: Okay. She is saying no quedo, "I don't want to say."

[DEFENSE COUNSEL]: And to that I would ask the Court to compel a response, Your Honor.

THE COURT: She needs to answer the question.

A: All I know was that—all I know, she wanted to come, that she wanted to keep studying. Some problems she had in school. I don't know. I never asked. It's her problem. And I took her into my home because she wanted to keep studying.

Q: So you don't really know personally why?

[DEFENSE COUNSEL]: Object to leading.

A: She had a problem with a student.

Q: How do you know?

A: Because my in-laws—my in-laws called and said that—called and said the principal did not want her to attend school there anymore.

Q: So your in-laws told you; is that correct?

A: Yes.

Q: You don't know if there were any actual problems in Lamesa?

A: No.

[PROSECUTOR]: Your Honor, we would re-urge the objection, she has no personal knowledge. In addition, would suggest there is no relevancy to that particular issue in this case.

[DEFENSE COUNSEL]: And to which I respond I am entitled to inquire into *present sense of impression at that time* and that it goes along with the Defense's theory that you heard me talk about in the opening statement that the child was having problems. And I think I am certainly entitled to go into that on cross-examination.

THE COURT: Sustain the objection. (Emphasis added)

This testimony was not admissible as a "Present Sense Impression" under TEX. R.EVID. 803(1) (Hearsay Exceptions: Present Sense Impression). This was not a statement describing or explaining an event or condition "made while the declarant was perceiving the event or condition, or immediately thereafter." Moreover, appellant has not shown an abuse of discretion by the trial court in the exclusion of this testimony. Montgomery v. State, supra. Point of Error No. 2 is overruled.

### The Juror, Irma Moralez

Irma Moralez was one of the jurors who were selected in this case. The record

shows that, after the State rested, the court received a note which Juror Moralez handed to the bailiff "during the last break." Appellant's attorney asked the court to "excuse that juror and move to the alternate." The reporter's record shows a discussion outside the presence of the jury where Juror Moralez confirmed that she had written the following note:

> Judge, does it matter that I know the family members of the victim? Because we lived in the same neighborhood in Lamesa. I had no idea who the girl is though.

Juror Moralez said that she did not know who M.A. was at the beginning of the trial but that, when the family came in, the parents looked familiar. Juror Moralez said that she did not really know them, that they did not visit in each other's homes, and that they did not socialize together. Juror Moralez said that it made her "feel kind of nervous" and that she "would have a hard time giving [appellant] a fair trial." The court did not excuse this juror at that time; however, after the State closed, the court decided to "let Juror Moralez go" and to use the alternate juror which had been selected. Appellant asked to examine Juror Moralez before she left to "make sure she [had not] talked to the rest of the jury" about M.A.'s family.

There is no showing of any harm to appellant from the trial court's actions in refusing to grant appellant's motion to excuse Juror Moralez and in refusing to allow appellant's attorney to question that juror in more detail. The record shows that the trial court excused Juror Moralez and seated the alternate juror before the jury began its deliberations. Even if we were convinced that the original rulings were in error, TEX.R.APP.P. 44.2(b) would require us to disregard any error in those rulings. If there was a problem, it was resolved by the subsequent ruling. Points of Error Nos. 3 and 4 are overruled.

■ The trial court did not abuse its discretion in refusing to permit the examination of Juror Moralez "about her conversations with other jurors before her discharge." See and compare *Huseman v. State,* 96 S.W.3d 368, 374 (Tex.App.-Amarillo 2002, pet'n ref'd), which held that the trial court did not err in refusing to permit appellant to engage in a "fishing expedition" without an affidavit showing reasonable grounds for a factual inquiry.

When appellant's attorney asked to examine Juror Moralez before her discharge, the trial court told him that he could do that later by affidavit. Appellant argues that this ruling was incorrect because TEX.R.EVID. 606(b) would not permit him to secure her affidavit. The trial court was correct. Subject to two exceptions which are not applicable,[4] Rule 606(b) does not permit a juror to impeach the verdict by testimony or affidavit about any matter or statement "during the jury's deliberations"; however, the record shows that the jury had not begun its deliberations at the time Juror Moralez was excused. For a good discussion of Rule 606(b), which applies in both civil and criminal cases, see *Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 371 (Tex. 2000):

> Finally, we consider the alleged conversation between [two of the jurors] during a trial break. Jackson argues that the conversation should not be considered "deliberations" and therefore

---

**4.** The exceptions are: (1) proof of any "outside influence" which was improperly brought to bear upon a juror and (2) rebuttal of a claim that a juror was "not qualified" to serve.

barred by Rule 606(b) and Rule 327(b). We agree. The Texas Rules of Civil Procedure use the term "deliberations" as meaning formal jury deliberations— when the jury weighs the evidence to arrive at a verdict. . . . Clearly, here the rule refers to formal deliberations and not incidental discussions that might occur between jurors during trial.

Point of Error No. 5 is also overruled.

### Motion for Mistrial

■ The following proceedings were heard in open court after the jury returned its verdicts that appellant was guilty of all three offenses. The jury had been excused before the punishment phase began, and the reporter's record showed the following:

THE COURT: I want to put this on the record. . . . I received a note from the jurors [Mary Vick and Doris Smith which] says: "[I]s the microphone on for the witnesses? Several of us cannot hear."

This note was simply handed to me, and I turned the microphone up and said nothing further about it. Okay? But it was a note handed to me by a juror, so—and I'm not going to destroy it.

[DEFENSE COUNSEL]: Can I inquire of the Court when you received it? What, yesterday, today?

THE COURT: Oh, yeah, it was yesterday morning early [first day of testimony]. I mean, it was pretty quick. And it said several of us cannot hear, so—as a matter of fact, it was real early . . . so I turned the microphone up.

\* \* \*

[DEFENSE COUNSEL]: While we're on the record, I would ask for a mistrial based on jurors not hearing testimony.

The two jurors who signed the note were brought into open court, one at a time, for examination by the court. Juror Mary Vick said that it "helped a lot" when the microphone was turned up but that some of the witnesses were "very soft-spoken" and difficult to hear. In answer to the court's questioning, she agreed that she was able to hear most of the testimony and that she "probably" did not ever feel like she should have raised her hand and asked for clarification. Juror Doris Smith agreed that she was "able to hear the proceedings" after the microphone was adjusted. She said that they sent the note to the judge during the "first break" and that she did not have any trouble after the microphone was turned up. Appellant has not shown an abuse of discretion by the trial court in overruling the motion for mistrial. Point of Error No. 6 is overruled.

### Stacking the Sentences

■ Appellant argues in his final point of error that the trial court "abused its discretion" in sentencing appellant to serve his sentences consecutively, rather than concurrently, because "there was no basis for stacking the sentences." As noted in Footnote No. 3, Section 3.03(b)(2)(A) now provides that, if the accused is found guilty of more than one offense arising out of the same criminal episode, the "sentences may run concurrently or consecutively" if each sentence is for a conviction of an offense under Section 22.011(a)(2). Each of appellant's convictions is for an offense under Section 22.011(a)(2), and they arose out of the same criminal episode. The trial court has the discretion to order either cumulative or concurrent sentences under TEX. CODE CRIM. PRO. ANN. art. 42.08 (Vernon Supp.2003). See also Nicholas v. State, 56 S.W.3d 760, 764 (Tex.App.-Houston [14th Dist.] 2001, pet'n ref'd). Point of Error No. 7 is overruled.

*This Court's Ruling*

The judgments of the trial court are affirmed.