**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45139**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: January 9, 2019 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| SABRA L. ADAMS, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County. Hon. Alan C. Stephens, District Judge.

Order withholding judgment and order denying motion for new trial, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Sabra L. Adams appeals from the order withholding judgment and order denying motion for new trial. On appeal, Adams asserts: (1) the district court erred by admitting irrelevant propensity evidence; (2) the district court erred by denying the motion for mistrial; (3) the prosecutor committed misconduct by disparaging defense counsel and by misstating the reasonable doubt standard during closing argument; and (4) the district court abused its discretion by denying the motion for new trial. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On April 30, 2016, Adams and her boyfriend attended a memorial service at a bar. While Adams was speaking with another bar patron, she observed a woman (Smith) touching her boyfriend's chest. What occurred next was disputed at trial. According to the State's witnesses,

1

Adams slammed her pool stick down, confronted Smith, and threatened to cut Smith's throat. Adams then went and grabbed a knife from her purse, and as Adams walked back towards Smith, she continued to threaten to cut Smith's throat. Adams' boyfriend restrained her, and the bartender disarmed her. The bartender then placed the knife in the cash drawer and escorted Adams out of the bar as Adams threateningly demanded return of the knife. The defense witnesses testified that they did not see Adams with a knife. It is undisputed that Smith waited to report this incident to the local sheriff's office until May 3, 2016. As part of the investigation, a deputy sheriff recovered the six-inch folding knife from the cash drawer at the bar.

The State charged Adams with aggravated assault, Idaho Code § 18-905(a), and the case proceeded to jury trial. At the start of the second day of trial, a juror indicated to the court that he had attended grade school with Smith's mother. Adams' counsel moved to remove the juror. The court explained that if the juror were to be excused, all parties would have to agree to try the case with the remaining eleven jurors,[1] or the court would have to declare a mistrial. Adams would not consent to be tried by an eleven-person jury. The court denied Adams' motion to remove the juror, and the trial proceeded. Ultimately, the jury found Adams guilty. After the court discharged the jury, Adams' counsel made an oral motion to set aside the verdict and an oral motion for mistrial. The court denied the motions.

Approximately two months after trial, Adams filed a renewed motion for mistrial based on the juror's prior acquaintance with Smith's mother in grade school. Adams also filed a motion for new trial alleging the State had withheld exculpatory evidence by failing to disclose an interview of a witness. During a hearing on the motions, the court denied Adams' renewed motion for mistrial. The court took the motion for new trial under advisement and later issued a decision and order denying that motion. The court withheld judgment and placed Adams on probation for three years. Adams timely appeals.

## II.

## ANALYSIS

Adams asserts the district court erred by admitting irrelevant propensity evidence. Adams also claims the court violated her constitutional right to a fair trial with an impartial jury

---

[1] On the first day of trial, another juror had disclosed that on two occasions she had briefly met with Smith as part of a Bible educational group. With the consent of both parties, the court excused that juror from service, leaving twelve jurors and no alternate.

2

by denying her motion for mistrial. Adams further argues the prosecutor committed misconduct during closing argument by disparaging defense counsel and by misstating the reasonable doubt standard. Finally, Adams contends the court abused its discretion by denying her motion for new trial.

**A.      The Bartender's Testimony**

During the first day of trial, the State called Smith and another bar employee to testify. Both witnesses testified that they saw Adams threaten Smith with a knife. The State also called the bartender to testify. The bartender testified that she heard Adams threaten to slit Smith's throat and then walk towards Smith with an open knife. Thereafter, the prosecutor asked, "Do you recall [Adams], being the defendant, making any threats against anyone other than [] Smith before she was escorted out the back door of the bar?" Adams' counsel objected based on the testimony's relevance and its admissibility under Idaho Rule of Evidence 404(b). Adams' counsel also requested a sidebar, which was held off the record. After the sidebar concluded, the prosecutor repeated the question on the record. Adams' counsel renewed the objection. The court noted the objection and then allowed the bartender to answer the prosecutor's question over Adams' objection. The bartender stated, "She threatened me, about giving her knife back, and that she would slit my throat, that she would burn the bar down also."

On appeal, Adams argues that the bartender's testimony regarding statements she made as she was being escorted out of the bar was improperly admitted because it is irrelevant and it constitutes Rule 404(b) evidence. Adams also contends that the district court abused its discretion by admitting the testimony because the court did not make any findings as to whether the testimony was evidence of bad acts, whether the State had provided proper notice of its intent to introduce the evidence at trial, or whether the prejudicial effect of the testimony substantially outweighed its probative value. According to Adams, the lack of explanation or reasoning on the record demonstrates that the court failed to act consistently with applicable legal standards, within the boundaries of its discretion, and that the court failed to reach its decision through an exercise of reason.

The State argues that the testimony is relevant and is not impermissible propensity evidence. The State also argues that Adams failed to provide support in the record for her argument that the district court abused its discretion. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether

the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion, acted consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

The evidence rule in question, I.R.E. 404(b), provides:

> (1)    Prohibited Uses.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2)    Permitted Uses; Notice in a Criminal Case.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case, the prosecutor must:
>> (A) file and serve reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>> (B) do so reasonably in advance of trial--or during trial if the court, for good cause shown, excuses lack of pretrial notice.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior.  *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009).  Of course, evidence of another crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule.  *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could believe the conduct actually occurred.  If so, then the court must consider:  (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice.  *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009).  On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record.  *Parmer*, 147 Idaho at 214, 207 P.3d at 190. In this case, Adams does not challenge the existence of her statements to the bartender as an established fact.  Therefore, we address only the relevancy and unfair prejudice issues.  We exercise free review of the trial court's relevancy determination.  *State v. Sheldon*, 145 Idaho

4

225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

With respect to the testimony's relevance, Adams argues that the bartender's testimony is not relevant because it does not make any material fact related to the charged offense--assaulting Smith with a knife--more or less probable. To the contrary, the State argues the bartender's testimony regarding what Adams did and said after she was disarmed is relevant because it makes the fact that Adams had a knife when she assaulted Smith more probable, it relates to Adams' state of mind at the time of the attack, and it relates to Adams' intent to do violence to Smith. To the extent the State argues the bartender's testimony is relevant because it makes the fact that Adams had a knife when she assaulted Smith more probable, we agree.

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stevens*, 146 Idaho at 143, 191 P.3d at 221. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Here, the bartender's testimony is relevant because it makes it more probable that Adams possessed the knife when she committed the assault upon Smith. The State charged Adams with aggravated assault and its legal theory was that Adams assaulted Smith with the knife. The defense attacked the State's theory by calling two witnesses who both testified that they did not see Adams with a knife during her confrontation with Smith. Thus, whether Adams had a knife during the incident was a fact of consequence to the determination of Adams' guilt. According to the bartender's testimony, Adams demanded that the knife be returned to her after the bartender had secured it in the cash drawer. The statements that Adams made to the bartender after her altercation with Smith and after she was disarmed not only show that Adams knew of the knife's existence, but also that she had a possessory interest in the knife and was asserting her

5

right to possess it. Accordingly, the bartender's testimony was relevant to the jury's determination of whether Adams had a knife and whether she assaulted Smith with it.

With respect to Rule 404(b), Adams argues the testimony about threats she made to the bartender as she was leaving the bar is nothing more than impermissible character evidence admitted to demonstrate that she had a propensity to threaten harm. She also contends the State failed to provide timely notice of its intent to use Rule 404(b) evidence at trial. Adams also argues the potential prejudice created by allowing the prosecution to portray Adams as a violent person substantially outweighed the testimony's probative value. According to Adams, the statements had no probative value as to whether she threatened Smith with a knife.

The State argues the bartender's testimony is not character evidence, and thus the State was not required to provide notice of this testimony in advance of trial. The State also contends the bartender's testimony about Adams' threats is not impermissible propensity evidence because the threats Adams made to the bartender are intrinsic to the crime and inextricably intertwined with the criminal episode. Finally, the State argues the danger of unfair prejudice to Adams does not substantially outweigh the probative value of admitting testimony regarding her threats to the bartender; but even if the danger of unfair prejudice does outweigh the probative value, the State argues admission of the bartender's testimony was harmless.

In this case, the bartender's testimony does not constitute inadmissible evidence under Rule 404(b). The record reveals that the probative value of the bartender's testimony was not entirely dependent upon its tendency to demonstrate Adams' propensity to threaten. As previously discussed, this testimony is relevant to Adams' assertion of a possessory interest in the knife and what happened to the knife after the altercation. Additionally, the thrust of the bartender's response to the prosecutor's question concerned the knife. Specifically, the testimony went directly to the degree of Adams' possession and her interest in repossessing the knife immediately following her altercation with Smith. Indeed, the prosecutor immediately focused on the knife following the bartender's response, asking, "The knife. Now, you say that ultimately you recovered it. . . . What did you do with it, in any event, after you recovered it?" The bartender's testimony was not offered for the purpose of proving propensity. The import of the bartender's answer to the prosecutor's question was as germane to the charges as it was to other threats, and thus the probative value of the bartender's testimony is not substantially

outweighed by the danger of unfair prejudice to Adams. Accordingly, the district court did not err by permitting the bartender to answer the prosecutor's question over Adams' objection.[2]

**B.      Motion for Mistrial**

At the hearing on Adams' renewed motion for mistrial, the district court stated:

> The [motion for mistrial], I'm going to deny. I don't believe that it's appropriate to declare a mistrial based on the juror knowing the mother of one of the complaining witnesses back when he was in elementary school. This guy was in his 50s or so. And he didn't feel like there would be any reason that he couldn't be fair and impartial, and the court was convinced of that. So I'm going to deny that motion.

On appeal, Adams argues her right to a fair trial by an impartial jury was violated when the district court denied her motion for mistrial following the juror's disclosure that he knew the complaining witness's mother. According to Adams, the juror's relationship with Smith's mother would have affected his analysis of whether Smith was telling the truth. Thus, Adams contends it is difficult not to conclude that the juror's history with Smith's mother had a continuing impact on the verdict. The State argues the district court did not err by denying Adams' motion for mistrial and renewed motion for mistrial. The State also argues Adams failed to show from the record that the juror's presence on the jury had any prejudicial impact on the trial.

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the

---

[2]      Although we have addressed the merits of the admission of the evidence, Adams' primary argument on appeal is the failure of the State to provide timely notice of the intent to use propensity evidence. That was not the objection below. Moreover, because the discussion of the objection was not recorded, Adams has failed to provide an adequate record on appeal. *See State v. Beck*, 128 Idaho 416, 422, 913 P.2d 1186, 1192 (Ct. App. 1996).

incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.3d 1102, 1105 (Ct. App. 1983).

Adams has failed to demonstrate how the juror's grade-school acquaintance with Smith's mother deprived her of the right to a fair trial, was prejudicial to her, or constitutes reversible error. Adams' assertion that it is difficult not to conclude that the juror's history with Smith's mother had a continuing impact on the trial or the verdict is speculation without any support in the record in the case.[3] The juror, on his own volition, appropriately called the court's attention to the fact that he had a heretofore undisclosed acquaintance with Smith's mother. The transcript reveals that he was placed under oath and questioned outside the presence of the other jurors regarding his relationship with Smith's mother. The juror's testimony indicates that he only knew the complaining witness's mother when he was in elementary school, which was apparently several decades before Adams' trial,[4] and that he himself had no relationship with the victim.

Additionally, after initially inquiring as to the scope of the juror's acquaintance with Smith's mother, the court asked, "And based on that information you've given us so far, can you be a fair and impartial juror in this case?" The juror responded, "Yes, sir." Thus, he stated unambiguously that his acquaintance with Smith's mother would not prevent him from being fair and impartial in deciding this case.

Finally, there is no evidence in the record that suggests the partiality of the other jurors was affected by this jurors' revelation. The court ordered the juror not to inform the other jurors about what had just transpired or about his prior relationship with Smith's mother. In the context of the full trial, the district court's refusal to excuse the juror does not constitute reversible error. Accordingly, the district court did not err by denying Adams' motions for mistrial.

---

[3]   Adams cites to *Pena v. State*, 102 S.W.3d 450, 455 (Tx. Ct. App. 2003) suggesting that a juror's relationship with the complaining witness's family has been a basis for excusing a juror in other cases. However, Adams fails to acknowledge that the juror in *Pena* told the court that after seeing the victim's family in the courtroom and realizing that she knew them, she "would have a hard time giving [appellant] a fair trial." *Id.* Here, the juror was unambiguous that his acquaintance with Smith's mother several decades prior would not prevent him from being a fair and impartial juror in this case.

[4]   The district court adjudged the juror to be in his fifties.

8

## C.     Prosecutorial Misconduct

For the first time on appeal, Adams argues the prosecutor committed misconduct during closing argument by disparaging defense counsel and misstating the burden of proof. While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

Adams made no contemporaneous objection to the prosecutor's closing argument at trial. In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978. Adams concedes she did not object to the prosecutor's statements during trial, and thus argues these instances of misconduct amount to fundamental error.

Accordingly, we must first address whether the statements in the prosecutor's closing argument violated any of Adams' unwaived constitutional rights. Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.* Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003).

Closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused. *State v. Garcia*, 100 Idaho 108, 110-11, 594 P.2d 146, 148-49 (1979); *see also Phillips*, 144 Idaho at 86, 156 P.3d at 587. A prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor

9

should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1. The safer course is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether. *Id.*

Appeals to emotion, passion, or prejudice of the jury through the use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588. The prosecutor's closing argument should not include disparaging comments about opposing counsel. *Id*. at 86, 156 P.3d at 587; *see also State v. Brown*, 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct. App. 1998).

Adams argues the prosecutor committed prosecutorial misconduct in two instances during closing argument. In the first alleged instance of prosecutorial misconduct, the prosecutor stated:

> Reasonable doubt. We have an instruction on the definition of reasonable doubt. And I will say that defense attorneys are good at raising doubt. That's what they're trained to do. That's what they are experienced in doing. Good ones can even avoid convictions, with multiple witnesses, like we have here, testifying to the crime. Sometimes can avoid a conviction, even with spectator video, which seems indisputable on its face.

According to Adams, this statement implies that jurors should not trust Adams' counsel because counsel is persuasive and could trick a jury into acquitting a guilty defendant. Thus, Adams argues this statement amounts to prosecutorial misconduct because it disparages defense counsel. We disagree.

No part of this statement constitutes a personal attack on or a disparaging comment about Adams' counsel. Likewise, this statement neither impugned the role or integrity of opposing counsel. The statement was clearly referencing defense attorneys generally. Even so, the prosecutor's statement did not disparage the defense function nor did it cast the role of defense counsel as that of a liar or distorter of facts attempting to camouflage the truth. We do not construe this statement as an implication that Adams' counsel would lie or trick the jurors into acquitting a guilty defendant. The prosecutor merely described the role defense attorneys play in raising doubt in criminal cases. The prosecutor pointed out that defense attorneys are trained to raise doubt, that they are experienced and skilled at doing so, and that good defense attorneys can raise enough doubt to merit an acquittal even in cases where the State has provided considerable incriminating evidence. The argument was not improper.

In the second alleged instance of prosecutorial misconduct, the prosecutor stated:

> There is no such thing--I repeat it--as a case without doubt. That's why your reasonable doubt instruction says that proof beyond a reasonable doubt does not require proof beyond mere possible doubt. *Your instructions says [sic] that if reason and common sense support a guilty verdict, the State has met its burden of proof.* And I'll submit to you, ladies and gentlemen, that reason and common sense here support that verdict of guilty. And I thank you for your attention.

(Emphasis added.) Adams argues the italicized statement misstates the reasonable doubt standard and effectively lowered the State's burden of proof. Adams contends this statement suggested to the jurors that if their reason and common sense told them that Adams threatened Smith with a knife, then the State had satisfied the beyond reasonable doubt standard. Again, we disagree.

The prosecutor's statement must be viewed in its proper context. The prosecutor referenced and relied upon the Idaho Criminal Jury Instruction defining the reasonable doubt standard throughout the State's closing argument. He first stated, "And it is, in fact, incumbent upon me, as the prosecutor, to prove each of these elements, in the elements' instruction, beyond any reasonable doubt." The prosecutor then walked the jury through each element of the charged crime and the evidence presented by the State as to each element. For some elements, the prosecutor explicitly argued that the evidence satisfied that element beyond a reasonable doubt. Finally, immediately before making the statement that Adams complains of on appeal, the prosecutor made clear to the jury that the State's burden does not require proof beyond mere possible doubt, but it requires proof beyond reasonable doubt.

The jury was instructed as follows:

> Second, the State must prove the alleged crime beyond a reasonable doubt. A reasonable doubt is not a mere possible or imaginary doubt. It is a doubt based on reason and common sense. It may arise from a careful and impartial consideration of all the evidence or from the lack of evidence. If, after considering all the evidence, you have a reasonable doubt about the defendant's guilt, you must find the defendant not guilty.

The prosecutor's statement was tied to the "reason and common sense" language in the instruction. When viewed together with the prosecutor's other remarks during closing argument, including references to the reasonable doubt standard as defined in the standard jury instruction, this statement did not lower the State's burden of proof. Additionally, the prosecutor's combined references to the reasonable doubt standard presented a straightforward explanation of the State's

11

burden to prove Adams' guilt beyond a reasonable doubt. Accordingly, the argument was not improper and, no prosecutorial misconduct was been shown.

**D.      Motion for New Trial**

Several months after her trial concluded, Adams filed a motion for new trial in the district court. In support of her motion for new trial, Adams attached a signed affidavit wherein a witness to the altercation swore that he had spoken with the sheriff's deputy on the day before Adams' trial and informed the deputy that he did not see Adams holding a knife on the night of the altercation. The witness also alleged that the deputy told him not to show up for Adams' trial the next day. In response, the State filed a signed affidavit from the deputy wherein the deputy swore that the witness indicated he did not want to cooperate, and that the witness never told the deputy whether he did or did not see a knife. The deputy also stated that when asked by the witness if he had to appear in court the deputy responded that unless he had been served with a subpoena he did not have to appear.[5]

On appeal, Adams argues the district court abused its discretion by denying her motion for new trial because the State suppressed exculpatory evidence of the deputy's interview with a witness the night before trial. Adams contends the court's finding that the interview was not suppressed by the State is not supported by substantial evidence and misapplies the applicable law. Adams further argues the court erred in denying her motion for new trial because the State has an independent obligation under *Brady*[6] to provide exculpatory evidence regarding its witness interviews regardless of whether Adams' counsel could have uncovered the same evidence with reasonable diligence.

A decision on a motion for new trial is reviewed under the abuse of discretion standard set forth above. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). Whether a trial court properly applied a statutory provision to the facts of a particular case is a question of law over which we exercise free review. *State v. Heiner*, 163 Idaho 99, 101, 408 P.3d 97, 99 (Ct. App. 2017). A motion for new trial based on newly discovered evidence must disclose: (1) that the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that

---

[5]      Adams did not secure a ruling from the district court as to the veracity of these competing affidavits.

[6]      *Brady v. Maryland*, 373 U.S. 83 (1963).

12

it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant. *State v. Drapeau*, 97 Idaho 685, 691, 551 P. 972, 978 (1976).

As an initial matter, the State argues Adams failed to preserve the *Brady* claim for appeal as she did not assert a *Brady* violation before the district court. The State acknowledges that the district court cited *Brady* in the decision and order regarding Adams' motion for new trial. However, according to the State, the district court did not conduct a *Brady* analysis or consider Adams' claim as a *Brady* claim. In reply, Adams argues the issue was preserved because below she had argued that the State had learned of exculpatory or impeaching testimony before trial and did not disclose it to the defense, which Adams contends is the *Brady* standard. We agree with the State.

Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). For the first time on appeal, Adams argues the court erred because the State violated her due process rights by neglecting its *Brady* obligations. In the motion for new trial, Adams argued to the district court that she was entitled to a new trial pursuant to I.C. § 19-2406(7). The motion stated, "[The witness's] testimony that there was no knife used during the confrontation is newly discovered evidence under Idaho Code § 19-2406(7)." Adams' motion then proceeded to analyze whether a new trial should be granted based on the newly discovered evidence under the four-part test established in *Drapeau*. Furthermore, at the hearing on the motion for new trial, Adams' counsel discussed the information in the witness's affidavit and then argued, "I think it satisfies 19-2406." Adams did not assert or argue a *Brady* violation to the district court in either her motion for new trial or during oral argument at the hearing on the motion. Importantly, "[a] *Brady* claim is quite distinct from a request for a new trial based on newly discovered evidence." *State v. Lankford*, 162 Idaho 477, 503, 399 P.3d 804, 830 (2017). Accordingly, insofar as Adams argues on appeal that the district court erred by denying her motion for new trial because the State violated its obligation under *Brady*, her argument is not preserved.

Additionally, I.C. § 19-2406(7) provides that a court may grant a new trial, upon a defendant's application, when "new evidence is discovered material to the defendant, and which he could not with reasonable diligence have discovered and produced at the trial." The district court denied Adams' motion for new trial because "the identity of the witness in question was

13

disclosed to [Adams] at the preliminary hearing and his existence was not suppressed." The identity of the witness was known to Adams since the preliminary hearing. Thus, the newly discovered evidence--i.e., the witness's account of what he saw at the bar on the night of the incident--was clearly within Adams' reach and could have been secured, with a reasonable amount of diligent pretrial effort, before trial and produced by Adams at trial. Moreover, even if the alleged newly discovered evidence had been introduced at trial, we are not convinced that it would have led to a different result or that its absence undermines confidence in the verdict. While the evidence may have reinforced the testimony of the other two witnesses that Adams called at trial to testify that she did not have a knife, the State presented strong evidence that Adams did, in fact, assault Smith with a knife. Smith, the bartender, and another bar employee all testified that they saw Adams with a knife in her hand as she approached Smith and threatened her. The bar employee testified that the bartender put the knife in the cash drawer, and the deputy testified that he retrieved the knife from the cash drawer. The knife itself was admitted into evidence. Thus, the evidence was also cumulative. Because the alleged newly discovered evidence could have been discovered and produced at trial with reasonable pretrial diligence by Adams, and since the alleged newly discovered evidence would probably not produce an acquittal, we cannot say that a new trial was warranted under these circumstances. Accordingly, the district court did not abuse its discretion by denying Adams' motion for new trial.

### III.

### CONCLUSION

The district court did not err by allowing the bartender to testify, over Adams' objection, about statements Adams made while being escorted out of the bar. Also, the district court did not err by denying the motion for mistrial. The prosecutor's statements during closing argument do not constitute fundamental error as neither statement violated any of Adams' unwaived constitutional rights. Finally, the district court did not abuse its discretion by denying Adams' motion for new trial. Therefore, the order withholding judgment and order denying motion for new trial are affirmed.

Judge LORELLO **CONCURS**.

14

Judge GUTIERREZ, **SPECIALLY CONCURRING**

I write separately to state my view that the argument of the prosecutor in closing to the jury regarding the role of defense counsel amounts to misconduct. Prosecutors too often forget that they are part of the machinery of the court, and that they occupy an official position, which necessarily leads jurors to give more credence to their statements, action, and conduct in the course of the trial and in the presence of the jury than they will give to counsel for the accused. *State v. Irwin*, 9 Idaho 35, 44, 71 P. 608, 611 (1903). "Where a prosecutor attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence, this impacts a defendant's Fourteenth Amendment right to a fair trial." *State v. Perry*, 150 Idaho 209, 227, 245 P.3d, 961, 979 (2010).

In *State v. Givens*, 28 Idaho 253, 152 P. 1054 (1915), the Idaho Supreme Court stated:

It is the duty of the prosecutor to see that a defendant has a fair trial, and [the prosecutor] should never seek by innuendo or inference to pervert the testimony, or make statements to the jury which, whether true or not, have not been proved. The desire for success should never induce [the prosecutor] to obtain a verdict by argument based upon anything except the evidence in the case and the conclusions legitimately deducible from the law applicable to the same.

*Id.* at 268, 152 P. at 1058. A prosecutor must not impugn the role of or integrity of defense counsel. *Bruno v. Rushen*, 721 F.2d 1193, 1194-95 (9th Cir. 1983). The *Bruno* Court held, "the obvious import of the prosecutor's comments was that *all* defense counsel in criminal cases are retained solely to lie and distort the facts and camouflage the truth." *Id.* at 1194. In *Bruno*, the Ninth Circuit reasoned:

[A]bsent specific evidence in the record, no particular defense counsel can be maligned. Even though such prosecutorial expressions of belief are only intended ultimately to impute guilt to the accused, not only are they invalid for that purpose, they also severely damage an accused's opportunity to present his case before the jury. It therefore is an impermissible strike at the very fundamental due process protections that the Fourteenth Amendment has made applicable to ensure an inherent fairness in our adversarial system of criminal justice. Furthermore, such tactics unquestionable tarnish the badge of evenhandedness and fairness that normally marks our system of justice and we readily presume because the principle is so fundamental that all attorneys are cognizant of it. Any abridgment of its sanctity therefore seems particularly unacceptable.

*Id.* at 1194 (internal citation omitted).

15

The necessary implication of the prosecutor's comments here is that the jurors should not trust defense counsel--he was someone who was persuasive and could even get a defendant off when there was clear evidence that the defendant was guilty. Such argument encourages the jurors to render a decision based on matters outside the evidence admitted at trial. I would hold, similar to *State v. Sheahan*, 139 Idaho 267, 77 P.3d 956 (2003),[1] that the prosecutor's argument in this regard was improper, but does not amount to fundamental error.

---

[1] In *Sheahan*, the prosecutor stated during closing argument that defense counsel "tried to hide the facts and to mislead" the jury and "tried to establish something that is not in evidence by his argument. Apparently acceding to that other maxim that if you tell a lie enough times and often enough, people are going to believe it." The *Sheahan* Court held that these comments "were improper" as they were "intended to inflame the minds of the jurors and arouse passion or prejudice against the defendant based upon asserted misconduct of defense counsel." *Id.* at 280, 77 P.3d at 969.